**Lora E. LOGE and Roger S. Loge, her husband, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 79–5088.**

United States District Court, W. D. Arkansas, Fayetteville Division.

July 28, 1980.

Walter S. Kyle, Fort Lauderdale, Fla., for plaintiffs.

Steven N. Snyder, Asst. U. S. Atty., W. D. Arkansas, Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

PAUL X WILLIAMS, Chief Judge.

In this case, plaintiffs, Mr. and Mrs. Roger Loge, seek damages under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* The case is before the Court on defendant's motion to dismiss.

The plaintiffs contend that all live virus poliomyelitis vaccines reproduce within the inoculated person and can spread to others who are in close contact with the one inoculated; that Mr. and Mrs. Loge decided to have their infant son inoculated with a live polio vaccine, but that Mrs. Loge chose not to subject herself to the risk involved in being vaccinated; that after the infant received a trivalent live poliomyelitis vaccine on July 26, 1976, manufactured under the tradename "Orimune," Mrs. Lora Loge contracted polio which rendered her permanently paralyzed; and that Mrs. Loge's poliomyelitis was caused by the inoculation given to her child.

In their complaint as amended, the Loges contend the United States is liable because the Secretary of Health, Education and Welfare was negligent in the following respects:

(1) licensing all spread virus vaccinations, including Orimune, without requiring the manufacturer to produce the information required by 21 C.F.R. § 630.10(b)(2);

(2) licensing all live oral poliovirus vaccines without testing their safety for persons in close proximity to those inoculated, but who themselves have not received the vaccine;

(3) licensing all live oral poliomyelitis vaccines when the secretary knew that the viruses reproduced within the inoculated person would not pass the safety requirements applicable to the viruses contained within the inoculant;

(4) licensing Types I, II and III of the Sabin poliomyelitis live vaccine without establishing that it was free from harmful effect on individuals who had been determined to be particularly susceptible to the disease;

(5) licensing Orimune without issuing regulations designed to insure its continued safety;

(6) failing to apply the review procedures set forth in 21 C.F.R. § 601.25;

(7) failing to enact regulations which would assure the safety of trivalent oral polio vaccine as defined in 21 C.F.R. § 600.3(p);

(8) subjecting Mrs. Loge to "shed virus" inoculation without her knowledge or consent;

(9) failing to approve a stronger package insert warning about adverse reactions;

(10) failing to use due care in approving Lederle Lot Number 451–162 of the trivalent oral polio vaccine.

The plaintiffs also pleaded that the defendant had subjected Mrs. Loge to exposure to the vaccine without her consent in violation of her right to privacy and security guaranteed by the Fourth Amendment to the United States Constitution and had deprived her of life, liberty and property in violation of the Fifth Amendment. The plaintiffs pleaded that the constitutional deprivations were knowingly committed by the government in furtherance of the national policy to vaccinate everyone, including those such as plaintiff who do not voluntarily submit to the immunization program. The plaintiffs contend that non-shed-virus vaccines are available.

The constitutional claim is discussed at the end of this opinion, after discussion of the claim under the Federal Tort Claims Act.

In its motion to dismiss, the government contends that the plaintiffs have failed to state a cause of action.

▮ The first issue raised by the government is that the Federal Tort Claims Act imposes liability on the government for acts which would be actionable if performed by individuals; and that since the granting or denial of a license is a particularly governmental function which can never be the basis of liability on the part of an individual, the government cannot be held liable under the Federal Tort Claims Act.

The United States Supreme Court has rejected the governmental function test, holding that the government is liable, if a private person would be liable, under *like* circumstances. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

The second issue raised by the government is that plaintiffs' cause of action falls within 28 U.S.C.A. § 2680(a), which provides as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The second clause of this section reserves immunity for the government for the exercise or omission of discretionary functions regardless of due care.

In plaintiffs' complaint as amended, they contend the government is liable for promulgation of certain regulations in that the regulations failed to properly protect persons such as Mrs. Loge. In other allegations, plaintiffs contend that the government licensed the vaccine, without requiring the certain tests designed to measure its effect on those who never directly received the vaccine, but were recipients of the shed-viruses. The regulations did not and do not require such tests. Plaintiffs are therefore attacking the government for its failure to promulgate such regulations.

In other sections of their complaint, plaintiffs contend the government should not have licensed the live shed-virus vaccines without establishing its safety on non-recipients. There is no regulation mandating such tests and, therefore, plaintiffs are contending the government is liable for failure to promulgate a certain regulation.

■ The promulgation of a regulation is a discretionary function. As stated by the Court in *Dalehite v. United States*, 346 U.S. 15, 27, 73 S.Ct. 956, 963, 97 L.Ed. 1427 (1953):

> [It] was not 'intended that the constitutionality of legislation, the legality of regulations, or the propriety of a discretionary administrative act should be tested through the medium of a damage suit for tort.'

■ We also hold that the government's decision to subject persons such as Mrs. Loge to inoculation by the shed-viruses, as distinguished from non-shed-virus vaccines, was a policy decision and cannot give rise to liability under the Federal Tort Claims Act.

> It is unnecessary to define, apart from this case, precisely where the discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing *plans, specifications* or schedules of operations. Where there is room for *policy judgment* and decisions, there is discretion. [Emphasis added]

*Dalehite v. United States*, 346 U.S. 15, 35–36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953).

■ The same principle protects the government for its decision concerning the warning on the package insert. The government contends that the discretionary function clause of section 2680(a) bars not just attacks on the regulations themselves, but also attacks on the issuance of every license or permit. We disagree. The regulations often establish mandatory criteria for the issuance or denial of a license or permit. In such a situation, the licensor lacks the discretion to waive the requirements. His actions, with respect to the issuance or denial of the license, are not discretionary within the meaning of 28 U.S.C. § 2680(a). *Griffin v. United States*, 500 F.2d 1059, 1068–1069 (3rd Cir. 1974).

■ In plaintiffs' complaint, they contend the government is liable for licensing all live virus vaccines, including Orimune, without requiring that data be produced showing the vaccine meets certain criteria. 21 C.F.R. § 360.10(b) (1980) is identical to the regulation in effect before 1976 which was codified as 42 C.F.R. § 73.114. The regulation provides as follows:

(b) *Criteria for acceptable strains and acceptable seed virus.* (1) Strains of attenuated poliovirus Types 1, 2, and 3 used in the manufacture of the vaccine shall be identified by: (i) Historical records including origin and techniques of attenuation, (ii) antigenic properties, (iii) neurovirulence for monkeys, (iv) pathogenicity for other animals and tissue cultures of various cell types, and (v) established virus markers including rct/40, d, and other markers shown to be associated with strain virulence.

(2) Poliovirus strains shall not be used in the manufacture of Poliovirus Vaccine, Live, Oral, unless (i) data are submitted to the Commissioner of Food and Drugs which establish that each such strain is free of harmful effect upon administration in the recommended dosage to *at least 1 million people susceptible to poliomyelitis,* under circumstances where adequate epidemiological surveillance or neurological illness has been maintained, and, (ii) each such strain produces a vaccine meeting the safety and potency requirements of §§ 630.11, 630.15 and 630.-16(b). Susceptibility shall be demonstrated by blood tests, stool examinations and other appropriate methods.

(3) Each seed virus used in manufacture shall be demonstrated to be free of extraneous microbial agents except for unavoidable bacteriophage.

(4) No seed virus shall be used for the manufacture of poliovirus vaccine unless its neurovirulence in Macaca monkeys is no greater than that of the Reference Attenuated Poliovirus distributed by the Bureau of Biologics. The neurovirulence of the seed virus shall be demonstrated by the following tests to be performed by the manufacturer: (i) The test prescribed in § 630.16(b)(1) using seed virus as test

material in place of monovalent virus pool material and (ii) the following comparative intramuscular neurovirulence test: Each of at least 10 monkeys shall be injected with a total of 5.0 ml. of the seed virus under test in one or more proximate locations of either a gluteus or gastrocnemius muscle. Similar injections shall be made in another group of 10 monkeys using the Reference Attenuated Poliovirus. Each monkey shall be injected intramuscularly with no less than 10 TCID of viral inoculum. All monkeys shall be observed for 17 to 21 days and a comparative evaluation shall be made of the evidence of neurovirulence of the virus under test and the Reference Attenuated Poliovirus, as prescribed in § 630.16(b)(1)(iii).

(5) Subsequent and identical neurovirulence tests shall be performed in monkeys whenever there is evidence of a change in the neurovirulence of the production virus, upon introduction of a new production seed lot, and as often as necessary otherwise to establish to the satisfaction of the Commissioner of Food and Drugs that the seed virus strains for vaccine manufacture have maintained their neurovirulence properties as set forth in § 630.16(b)(1)(iii).

(6) The Commissioner of Food and Drugs may, from time to time, prohibit the use of a specified strain whenever he finds it is practicable to use another strain of the same type which is potentially less pathogenic for man, and that it will produce a vaccine of greater safety and of at least equivalent potency.

We hold that this regulation is mandatory. It does not vest the licensor with discretion concerning whether it can waive test results establishing the vaccine's effect on one million susceptible persons. To the extent that plaintiffs contend Orimune was licensed without complying with this regulation, we cannot say that plaintiffs' complaint is barred by the discretionary function exception to the Federal Tort Claims Act.

Plaintiffs also contend that defendant is liable for licensing all Sabin strains without requiring the mandatory test data of 21 C.F.R. § 630.10(b). The Sabin strains were licensed before promulgation of the regulations and their licensing in such a situation was discretionary. *Griffin v. United States*, 351 F.Supp. 10, 26 n. 20 (E.D.Pa.1972) rev'd on other grounds, 500 F.2d 1059 (3rd Cir. 1974).

The plaintiffs have also pleaded that the government is liable for failing to follow the review procedures set out in 21 C.F.R. § 601.25, which provides, in part, as follows:

(a) *Advisory review panels.* The Commissioner of Food and Drugs shall appoint advisory review panels (1) to evaluate the safety and effectiveness of biological products for which a license has been issued pursuant to section 351 of the Public Health Service Act, (2) to review the labeling of such biological products, and (3) to advise him on which of the biological products under review are safe, effective, and not misbranded. An advisory review panel shall be established for each designated category of biological product. The members of a panel shall be qualified experts, appointed by the Commissioner, and shall include persons from lists submitted by organizations representing professional, consumer, and industry interests. Such persons shall represent a wide divergence of responsible medical and scientific opinion. The Commissioner shall designate the chairman of each panel, and summary minutes of all meetings shall be made.

The Court takes judicial notice that the advisory review panel has not yet issued its report. The vaccine which Mrs. Loge's son received was distributed pursuant to Lederle's original license issued in 1963. Any omissions in mandatory tests in conjunction with the review cannot have affected Mrs. Loge.

Plaintiffs have pleaded that the government failed to use due care in approving Lot 451–162. Since the promulgating or omission of regulations is discretionary, but adherence to them is not, we infer

that plaintiffs are pleading the government failed to follow one of its mandatory, non-discretionary regulations in approving Lot 451–162. To this extent, we cannot say that plaintiffs' claim is barred by the discretionary function exemption of 28 U.S.C. § 2680.

■ In its motion to dismiss, the government contends that plaintiffs' complaint fails to state a cause of action because the government owes no duty, a *sine qua non* of negligence, concerning the issuance of licenses. We have held that the discretionary function exemption of 28 U.S.C. § 2680(a) bars each ground for relief asserted by plaintiffs under the Federal Tort Claims Act, except for two: failure to require the mandatory tests of 21 C.F.R. § 360.10(b) when Orimune was licensed in 1963; and failure to follow mandatory tests when Lederle's Lot 451–162 was approved. We now hold that these two remaining allegations of negligence fail to state a cause of action because under Arkansas law and the law of Washington, D. C., there is no duty to use due care imposed on one in a similar situation.

In *Gelley v. Astra Pharmaceutical Products, Inc.*, 610 F.2d 558 (8th Cir. 1978), the plaintiff asserted liability on the part of the government for negligently failing to withdraw xylocaine from interstate commerce. The Court noted that under the law of the District of Columbia, no cause of action exists against an individual for similar activity.

■ The Court also noted that under Minnesota law, the place of the harmful impact, no cause of action exists. In the District of Columbia, there is no tort duty imposed on private persons to perform activities analogous to the granting or denial of licenses for drugs and in the absence of such duty, there can be no liability for negligence on the part of an individual or the government. *Gelley v. Astra Pharmaceutical Products, Inc.*, 466 F.Supp. 182 (D.Minn.1979) aff'd on other grounds, 610 F.2d 558 (8th Cir. 1979).

■ Under Arkansas law, all political subdivisions of the state are immune from tort liability and therefore there are no Arkansas cases dealing with tort liability for regulatory acts and omissions. This does not of itself defeat a cause of action under the Federal Tort Claims Act. *Rayonier Inc. v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). There also are no Arkansas cases which address the issue of duty owed by one to another who gratuitously undertakes services for a third party, but we hold that if the courts of Arkansas were faced with the issue they would follow the principles set out in the Restatement (Second) of Torts § 324 A which provides as follows:

§ 324 A. Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

■ Applying these principles to the case at bar, we hold that by licensing the trivalent polio oral vaccine the government gratuitously undertook services to the drug manufacturer which it should recognize as necessary for the protection of the residents of the United States. As such, the government would be liable if it were a private individual under Arkansas law if the government's failure to exercise reasonable care increased the risk, if the government undertook to perform a duty owed by the drug manufacturers to the recipients of the vaccines, or if the harm suffered by Mrs. Loge was because of reliance on the government.

In licensing the trivalent vaccine, the government cannot be said to have increased the risk which was inherent in the drug. Neither can we say that the government undertook the duty owed by the drug manufacturer to those who would be affected by the vaccine.

We also find that the harm suffered by Mrs. Loge cannot be said to have been caused by reliance on the government.

We therefore hold that the Loges' complaint fails to state a cause of action.

The plaintiffs also contend that their constitutional rights to privacy, to due process of law and to just compensation have been abridged by the defendants, United States and unknown employees of the Department of Health, Education and Welfare.

We recognize that federal employees and agents may be liable for their unconstitutional acts. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We also recognize that the Federal Tort Claims Act does not bar an action for deprivation of constitutional rights. *Carlson v. Green*, —— U.S. ——, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). We hold, however, that plaintiffs have not stated a cause of action for deprivation of constitutional rights. The Constitution does not include a guarantee to be free from personal injury under the circumstances of this case.

The Clerk will prepare an order in accord with this opinion which dismisses the action for failure to state a cause of action.