[L.A. No. 31732. Mar. 19, 1984.]

CEOLA NUNN, as Administratrix, etc., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

618

**COUNSEL**

Yusim, Stein & Hanger, Robert E. Levine, Sandra Calin, Andrew D. Stein and James O'Brien for Plaintiff and Appellant.

John K. Van de Kamp and George Deukmejian, Attorneys General, Nelson Kempsky and Michael Franchetti, Chief Deputy Attorneys General, Richard D. Martland and Willard S. Shank, Chief Assistant Attorneys General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis and David S. Poole, Deputy Attorneys General, Veatch, Carlson, Grogan & Nelson, James R. Nelson, Herbert F. Blanck and Blanck, Lynch & Freytag for Defendants and Respondents.

**OPINION**

**REYNOSO, J.**—Plaintiff Ceola Nunn, administratrix of the estate of Jethro G. Nunn, appeals from a judgment on the pleadings in favor of defendants State of California (State); Douglas Faigin, as head of the Bureau of Collection and Investigative Services; and the Los Angeles Community College District (District).

The immunity provisions set forth in the California Tort Claims Act, we hold, shield all defendants from liability. With respect to defendants State and Faigin, we hold that their alleged delay in promulgating regulations constitute discretionary activity which is not subject to judicial review. We further conclude that no mandatory duty was imposed upon defendants State and Faigin pursuant to Government Code section 815.6 which would give rise to statutory liability. And with respect to defendant District the complaint fails to reveal any basis for liability; as a matter of law, defendant District is immune from liability for alleged negligent administration of its testing procedure.

# I

The trial court entered a judgment on the pleadings against plaintiff. The first amended complaint states four causes of action which concern this appeal.

The first and second causes of action alleged in the complaint—for wrongful death and survival, respectively—set out plaintiff's primary theory of liability. On January 8, 1976, plaintiff's decedent was fatally shot while patrolling a manufacturing plant. At the time of his death, decedent was acting in the course and scope of his employment as a uniformed security guard and was not armed with a gun. It is alleged that the State (through the Department of Consumer Affairs and its Bureau of Collection and Investigative Services (Bureau)) and defendant Faigin (as chief of the Bureau) negligently delayed the promulgation of regulations governing a course of instruction in firearms use for employees of licensed private patrol agencies. The delay denied decedent a "reasonable opportunity" to complete the course and obtain a license to carry a firearm by the statutory deadline of January 1, 1976. As a proximate result, decedent was obliged to perform his job without the protection of a firearm. Consequently, he was placed in a "dangerous condition" which resulted in his death.

The complaint also alleges that Nunn enrolled in a firearms qualification course which was "negligently conducted, planned[,] inspected, implemented and administered" by the District and that decedent was "refused . . . an opportunity to complete his first test" in order to obtain his license prior to the January 1, 1976, deadline. As a proximate result of this negligence plaintiff was compelled to work without protection, thus he was placed in "a dangerous condition" resulting in his death.

The third and fourth causes of action—again, for wrongful death and survival, respectively—assert another basis for holding the State and defendant Faigin liable. It cites Bureau's failure to disclose to private patrol employers that it had advised law enforcement agencies to defer enforcement of the statutory certification requirement notwithstanding earlier public announcements that security guards violating the law would be subject to arrest. Thus, "[A]s a proximate result of this omission decedent, who had not yet obtained a firearms license, was compelled on January 8, 1976 to patrol as a security guard without the protection of his weapon and was placed in a dangerous condition."

Since a motion for judgment on the pleadings on the ground that no valid cause of action is stated performs the same function as a general

demurrer, the facts alleged in the complaint must be accepted as true for the purposes of review. (*Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 222-223 [162 Cal.Rptr. 669].)

## II

■ We turn first to an examination of plaintiff's cause against defendants State and Faigin. Are they liable due to their failure to more promptly promulgate regulations required by Business and Professions Code section 7514.1?[1]

State and Faigin argue that the promulgation of the regulation in question is governed by Government Code sections 818.2[2] and 821[3] which provide immunity for public entities and employees, respectively, for injuries caused by either (1) the adoption of an enactment, or (2) the failure to adopt or enforce a law. The primary issue with which we deal, therefore, is whether the defendants' actions in promulgating corresponding regulations to Business and Professions Code section 7514.1 fall within the immunity provisions of the cited code sections. In the following, we first discuss the ap-

---

[1]As enacted in 1974, former Business and Professions Code section 7514.1 provided: "(a) Every uniformed employee of a licensee who operates a private patrol shall complete a course of training in the exercise of the powers to arrest and a course of training in the carrying and use of firearms. The course of training in the carrying and use of firearms shall not be required of any employee who is not required or permitted by a licensee to carry or use firearms. The course in the carrying and use of firearms and the course of training in the exercise of the powers to arrest shall meet the standards which shall be prescribed by the Department of Consumer Affairs. The department shall encourage restraint and caution in the use of firearms by uniformed employees of a licensee.

"(b) The department shall prescribe the minimum standards for a course of training in the exercise of powers of arrest.

"(c) No uniformed employee of a licensee, who was licensed by the department on or before January 1, 1976, shall carry or use any firearm unless he has successfully completed the course of training prescribed in subdivision (a) on or before January 1, 1976. No uniformed employee of a licensee, who was licensed by the department after January 1, 1976, shall carry or use any firearm until he has successfully completed the course of training prescribed in subdivision (a).

"(d) The department shall report to the Legislature on or before March 1, 1977 concerning the nature and scope of the training offered pursuant to subdivision (a), the number of employees so trained and the conformity of the industry to the standards established by the department." (Stats. 1974, ch. 1214, § 1, pp. 2622-2623.)

The statute has since been amended and renumbered as Business and Professions Code section 7514.2 (Stats. 1979, ch. 982, § 2, pp. 3355-3356 and was repealed by Stats. 1983, ch. 1196, § 1.)

[2]Section 818.2 provides: "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."

[3]Section 821 provides: "A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment."

plicability of the above immunity provisions, and second, any possible statutory liability of defendants State and Faigin.[4]

■ The immunity afforded by Government Code sections 818.2 and 821 attaches only to discretionary functions. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 916 [136 Cal.Rptr. 251, 559 P.2d 606]; *Roseville Community Hospital* v. *State of California* (1977) 74 Cal.App.3d 583, 586-587 [141 Cal.Rptr. 593].) In *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 789 [73 Cal.Rptr. 240, 447 P.2d 352], we rejected a purely mechanical approach to the determination of what is discretionary. Rather we "articulated a functional approach in distinguishing immunized 'discretionary' actions from nonimmunized 'ministerial' actions. We focused on the underlying reason for granting immunity—to ensure "judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of the government'." (*Id.*, at p. 793, italics in original.) We recognized that immunity attaches to quasi-legislative policy decision-making areas which are sufficiently sensitive to justify blanket immunity. (*Id.*, at p. 793.) Leaning heavily upon the language of *Dalehite* v. *United States* (1953) 346 U.S. 15, 35-36 [97 L.Ed. 1427, 1440-1441, 73 S.Ct. 956], we described the difference as that between the "planning" and "operational" levels of decisionmaking. (*Id.*, at p. 794; see *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 750 [84 Cal.Rptr. 257].)

■ The Legislature determined that "private patrol [employees] shall complete a course of training in the . . . carrying and use of firearms." (Bus. & Prof. Code, § 7514.1, subd. (a).) The Bureau's subsequent promulgation of regulations, as directed by section 7514.1, implemented that decision. Such implementation necessarily involves "planning" rather than nondiscretionary "operational" or "street level" decisions. As such, the quasi-legislative implementation of basic legislative decision is protected.

The cases cited by plaintiff in support of its argument—that defendants lack immunity for its implementation of the Legislature's "basic policy decisions"—all involved distinguishable "operational" or "street level" decisions. (See *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453] [policeman allegedly negligent in allowing the plaintiff, driver of one of the cars, to join him in examining collided vehicles in intersection]; *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799], disapproved in *Williams* v. *State of*

---

[4]We recognize that the question of whether there is possible statutory liability arising because a "mandatory duty" exists under Government Code section 815.6 should, analytically, precede the question of whether there is immunity because the duty created is an obligation to perform a discretionary function rather than a ministerial one. (See *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 906-911 [136 Cal.Rptr. 251, 559 P.2d 606].)

*California* (1983) 34 Cal.3d 18, 28 [192 Cal.Rptr. 233, 664 P.2d 137] [policeman negligent in failing to record identity of motorcyclist involved in accident investigated]; *Johnson* v. *State of California, supra,* 69 Cal.2d 782 [Youth Authority placement officer's failure to warn foster parents of ward's violent background]; *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053 [84 Cal.Rptr. 27] [probation department's negligent placement of dependent child in foster home where she suffered mistreatment and failure to perform state-mandated inspection, supervision and control]; *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281 [57 Cal.Rptr. 312] [state botanist's negligent performance of chemical analysis].)

In contrast, the formulation of regulations involved holding public hearings and the review of public comments. (The Administrative Procedure Act; Gov. Code, tit. 2, div. 1, pt. 1, ch. 4.5.) The Bureau was presented with two contending interests requiring judgment. First, it had an interest in having maximum input into the drafting of the regulations in order to ensure their adequacy. On the other hand, it recognized the necessity of implementing regulations as soon as possible in order that the required courses could be provided. ■■ ■■ ■■ ■■ ■■ Subjecting the Bureau to the possibility of tort liability for its exercise of discretion in accommodating these contending interests would interfere with the Bureau's deliberative process.[5] In addition, permitting such an action would contravene the doctrine of separation of powers which underlies immunity (*Johnson* v. *State of California, supra,* 69 Cal.2d at pp. 793-794); it would circumvent the long standing judicial policy of deference to the special competence of administrative agencies. (Cf. *Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172 [70 Cal.Rptr. 407, 444 P.2d 79].)

The question of the length of time governmental bodies may take to decide a matter submitted to it for decision has been held to be "discretionary." (See *Engel* v. *McCloskey* (1979) 92 Cal.App.3d 870 [155 Cal.Rptr. 284]; *Wyatt* v. *Arnot* (1907) 7 Cal.App. 221 [94 P. 86].) In *Engel,* the court held that the manner and duration of a State Bar investigation into the moral character of bar applicants is discretionary. The court noted that the "manner in which the investigation was conducted and the conclusion of whether further investigation or hearing was required involved substantial exercise of judgment." (*Engel* v. *McCloskey, supra,* at p. 883.) In *Wyatt,* the court

---

[5]Federal decisions construing the immunity afforded discretionary acts under the Federal Tort Claims Act (28 U.S.C. § 2680(a)) are useful precedent in light of the observation in the Law Revision Commission comment to Government Code section 818.2 that the immunity set out therein falls within the aforesaid federal immunity provision. Accordingly, it has been said that the promulgation of a regulation is a discretionary function (*Loge* v. *United States* (W.D.Ark. 1980) 494 F.Supp. 883, 887), and that tort liability will not be imposed for the failure to promulgate rules deemed necessary by a private litigant (*Miller* v. *United States* (E.D.Ky. 1974) 378 F.Supp. 1147, 1149).

also noted that the decision as to when a case is ready to be decided involves as much judgment as how it is to be decided. (*Supra,* 7 Cal.App. at p. 228.) In like manner, the Bureau had to determine when it had acquired sufficient information from hearings and public comments in order to draft adequate regulations and when no further revising of the draft regulations were required. These matters were entrusted to the Bureau by the Legislature and involved a substantial exercise of judgment. They are therefore "discretionary" activities requiring immunity to the defendants State and Faigin for any alleged delay in the promulgation of these regulations.

Plaintiff nevertheless contends that Business and Professions Code section 7514.1 imposed on defendants State and Faigin a mandatory duty to promulgate regulations in time to afford private security guards a reasonable opportunity to complete the firearms course before January 1, 1976.[6] She relies on Government Code section 815.6 which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty . . . ." Of course, if the cited code section imposes such a mandatory duty, and the mandatory duty is not a mere obligation to perform a discretionary function, then the violation of this duty would place what otherwise might be characterized as a "discretionary function" outside the scope of the immunity afforded by Government Code sections 818.2 and 821. (*Morris* v. *County of Marin, supra,* 18 Cal.3d 901, 906-910 [136 Cal.Rptr. 251, 559 P.2d 606].) Because we conclude that Business and Professions Code section 7514.1 does not impose on defendants such a duty, the defendants continue to be entitled to the immunity afforded by these sections.

■ Whether a particular statute is intended to impose a mandatory duty is a question of interpretation for the courts. (See *Morris* v. *County of Marin, supra,* at pp. 906, 911; Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1980) § 2.43, p. 96.) ■ The legislative intent can usually be determined from the statutory language. (*Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 910.) ■ However, when the specific language does not shed light as to the intent of the Legislature, it can be determined from other factors which indicate the intent of the Legislature. (*Id.,* at p. 910, fn. 6.) ■ It is well established that statutes must be given a reasonable construction that conforms to the apparent purpose and intention of the law makers (*Clean Air Constituency* v. *California State Air*

---

[6]Although plaintiff does not refer to the statutory basis of defendant Faigin's liability, presumably it is Government Code section 820, subdivision (a), which states, in relevant part, that "[e]xcept as otherwise provided by statute . . . a public employee is liable for injury caused by his act or omission to the same extent as a private person."

*Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617]; *County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 36 [148 Cal.Rptr. 584, 583 P.2d 109]), and the various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155]; *Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334].)

■■■ We are guided by those principles of statutory construction. Former Business and Professions Code section 7514.1, subdivision (a), provided that the firearms instruction course to be taken by armed security guards "shall meet the standards which shall be prescribed by the Department of Consumer Affairs" (the parent agency of the Bureau). In *Morris* v. *County of Marin, supra,* 18 Cal.3d at page 910 we concluded that Labor Code section 3800 imposed a mandatory duty due to the obligatory nature of the word "shall" employed in the statute. We cautioned, however, that it should not be assumed that every statute that uses the word "shall" is necessarily obligatory. (*Id.* at p. 910, fn. 6.) Here, the statute clearly mandated that the Bureau promulgate standards regulating the firearms course. Nevertheless, it did not expressly set a deadline for the issuance of the standards. Thus, a plain reading of the statutory language does not lead to the conclusion that the Legislature intended to impose a duty on defendants to prescribe the required regulations in time for the private security guards to complete their course before January 1, 1976.

We must still determine whether subdivision (c) of the statute which prohibited private security guards from carrying or using firearms unless "they successfully completed the course of training prescribed in subdivision (a) on or before January 1, 1976," indicates the Legislature's intent to impose such a duty. Arguably, subdivision (c) could be interpreted to implicitly require that the regulations be promulgated in time to provide the guards with an opportunity to complete the course before January 1, 1976. We conclude, however, that a more reasonable interpretation is—that the Legislature intended to give the Bureau sufficient time flexibility in order to ensure that the prescribed regulations would be adequate, and did not intend to impose a mandatory duty that the process be completed by this date. Although there is an interest in expeditiously promulgating the standards, we cannot reasonably conclude that this interest outweighs the contending interest in promulgating adequate regulations.

In any event, even if the Legislature had intended to impose a "mandatory" duty to promulgate the regulations in sufficient time before January 1, 1976, section 815.6 requires that the statute imposing such a mandatory

duty be "designed to protect against the risk of [the] particular kind of injury" which occurred. (*Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 707 [141 Cal.Rptr. 189]; *Chaplis* v. *County of Monterey* (1979) 97 Cal.App.3d 249, 260 [158 Cal.Rptr. 395].) The Legislature clearly enacted Business and Professions Code section 7514.1 for the purpose of protecting the public from the danger of incompetent armed private security guards. Since the Legislature conditioned the use of firearms on the guards' completion of a firearms instruction course, it might be argued that the legislative scheme reflects the Legislature's recognition of the guards' interest in protecting themselves on the job. While we agree that the statute confers some benefit on the guards, such benefit is incidental. Accordingly, the statutory purpose is not to protect plaintiff from this type of injury. The primary purpose—protecting the public—remains.

We conclude that the immunity of Government Code sections 818.2 and 821 attached to defendants.[7]

## III

Plaintiff asserts the liability of the District on the ground that it "negligently conducted, planned[,] inspected, implemented and administered the testing procedures" of the firearms instruction course, and for its refusal "to give plaintiff's decedent an opportunity to complete his first test," thereby denying decedent a reasonable opportunity to obtain his firearm license before December 31, 1975. Defendant District responds that the complaint reveals no basis to support an actionable duty, and furthermore, its decision regarding *when* to offer the test was a discretionary decision protected by Government Code section 818.4. We agree with District.

Upon liberal construction, the complaint fails to reveal facts essential to the existence of defendant District's statutory liability. (See, e.g., *Taylor* v. *Mitzel* (1978) 82 Cal.App.3d 665 [147 Cal.Rptr. 323]; *Herndon* v. *County of Marin* (1972) 25 Cal.App.3d 933 [102 Cal.Rptr. 221].) The corresponding regulations to Business and Professions Code section 7514.1 contain language which permits "institutions . . . wishing approval of the bureau [of Consumer Affairs] to offer a course," to apply for such approval.[8] However, neither Business and Professions Code section 7514.1 nor the corre-

---

[7]As to the issue whether the Bureau had an obligation to inform the guards of its determination that the law should not be enforced as of its effective date because of the delay in issuing the regulations, we simply note that the Bureau lacked authority to decide that the law would not be enforced.

[8]Title 16 California Administrative Code, section 698(a).

sponding regulations impose a mandatory duty upon defendant District to offer a firearms instruction course. Moreover, section 7514.1 and the corresponding regulations do not impose a time limitation within which the course and the test were to be offered by defendant District. Although the Bureau recognized the need to adopt emergency regulations in order that "approved courses may be provided as soon as possible," such recognition hardly rises to the level of requiring District to allow its students to complete the course before January 1, 1976.

The District invokes immunity pursuant to Government Code section 818.4 for its alleged refusal to permit decedent to complete his first test before the end of 1975. Government Code section 818.4 provides, in relevant part: "A public entity is not liable for an injury caused by . . . the failure or refusal to issue . . . any permit, license, certificate . . . where the public entity . . . is authorized by enactment to determine whether or not such authorization should be issued . . . ."[9] In *Morris* v. *County of Marin, supra,* 18 Cal.3d 901, we reviewed the statutory language and legislative history of Government Code section 818.4 and interpreted the section to be limited to discretionary licensing activities. (See, e.g., *Slagle Construction Co.* v. *County of Contra Costa* (1977) 67 Cal.App.3d 559 [136 Cal.Rptr. 748] (den. of building permit immunized by § 818.4); *Burns* v. *City Council* (1973) 31 Cal.App.3d 999 [107 Cal.Rptr. 787] (same).)

Defendant relies primarily upon *Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814 [131 Cal.Rptr. 854] (petn. for hg. den., Sept. 29, 1976) for the position that it owed no duty of care to decedent. In *Peter W.,* a high school graduate brought suit against a public school system for its negligent failure to provide adequate instruction. The court held, in relevant part, that policy considerations precluded a finding of actionable duty on the part of "agencies who administer the academic phases of the public educational process." (*Id.* at p. 825.)

Although the case at bench does not present problems faced in *Peter W.* of assessing damages, the general policy considerations which precluded a finding of duty in *Peter W.* are applicable to the case at bench. There is little difference between an educational institution's implementation of classroom instruction and its administration of testing procedures—both are in-

---

[9]By its express terms, the language limits immunity to instances "where the public entity is authorized to determine whether or not such [certificate] should be issued [or] denied." (*Morris* v. *County of Marin, supra,* 18 Cal.3d 901; *Elson* v. *Public Utilities Commission* (1975) 51 Cal.App.3d 577 [124 Cal.Rptr. 305].) Although none of the parties advert to the statutory basis of defendant District's authorization to make a determination as to the issuance of the certificate, presumably it is properly approved and authorized pursuant to the relevant regulations.

tegral to the academic functions of an educational institution. The recognition of the court in *Peter W.* of the dangerous consequences in expanding tort liability against a public educational institution in its performance of its academic functions are equally applicable to the present case.

The District's determination as to when a student would be permitted to complete his first test is an "integral part of the process" leading to the grant or denial of decedent's certification for firearms instruction. In general, the decision of an educational institution as to whether and when a student should be permitted to complete a test necessarily involves numerous factors, e.g., administrative convenience, testing costs, students' prerequisite qualifications, students' attendance records, students' improper conduct, and adequate time for test preparation. Given the delicate balance involved in weighing these factors, we find that the decision of District as to whether and when decedent should have been permitted to complete the firearms test was a discretionary decision shielded by Government Code section 818.4.

The judgment is affirmed.

Mosk, J., Kaus, J., Broussard, J., Grodin, J., and Richardson, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.