[No. B078892. Second Dist., Div. Seven. Aug. 22, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM CLARK CARRON, Defendant and Appellant.

COUNSEL

Bradley Wm. Brunon for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Linda C. Johnson and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—In this case of first impression, we hold that the crime of stalking (Pen. Code,[1] § 646.9) does not require an intent to kill or cause great bodily injury, but only a specific intent to make a "credible threat" so as to make the threatened person reasonably fear death or great bodily injury. Accordingly, we affirm the stalking conviction and judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

There being no insufficiency of evidence claim, the facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

Wayne Jackson, the victim, was a male model and sometime actor who met appellant in February 1991. The victim told appellant they could only be friends, but appellant said he had a "crush" on the victim. By July 1991 appellant was obsessed with the victim, telephoning him all night and coming to his residence uninvited.

In the fall of 1991, when the victim went to appellant's office, he saw photographs of himself all over appellant's walls.

The victim repeatedly told appellant to leave him alone. Appellant continued to telephone the victim and come to his residence.

In November 1991, to avoid appellant, the victim moved to a rear bungalow at 415 S. Irving Boulevard in Los Angeles. Appellant's telephone calls continued.

In July 1992 the victim obtained a temporary restraining order against appellant and, at a hearing on August 12, 1992, a court issued an order, effective for three years, prohibiting appellant from harassing or telephoning the victim and from coming within 75 yards of his residence.

In September 1992 the victim built solid wood gates at both ends of his residence, strung perimeter tin cans, and installed outside lights.

In October 1992 the victim's car, while parked at his residence, was vandalized.

---

[1]Statutory references, unless otherwise noted, are to the Penal Code.

During the ensuing months, until February 19, 1993, the victim changed his telephone number repeatedly, obtained a telephone security code, switched to Pacific Bell Message Center, had the telephone company install a "trap" on his phone, obtained a post office box after his mail was stolen, parked his car a mile away from his residence, and for security, had friends stay at his residence.

Nothing worked. The harassing, threatening phone calls—more than 1,000—continued. Some were recorded. The recorded calls—all traced to appellant's residence—contained barking, screams, tapping sounds, epithets, and such threats as: "You're going to have your face cut off. You mother fucker son of a bitch." And "You know what they do to Arabs . . . who lie . . . they cut their tongues out. I'd hate to have that happen to you. You little mother fucker lying son of a bitch, whore, cunt, mother fucker, bitch, prick, whore." And "call me here . . . or you're gonna have your tongue cut off, Eeehhh! Eeehhh!"

Appellant continued to come to the victim's residence, repeatedly vandalized the victim's car (puncturing tires, breaking windows, cutting wires), followed the victim when he went to the market, and, on February 19, 1993, after destroying a car belonging to the victim's friend, told the victim, "Next time I'll kill you."

Appellant was arrested and charged with two counts of felony stalking (count I for the period July 1, 1992 to December 1, 1992, count III for the conduct committed on February 18 and 19, 1993) and one count of making terrorist threats (§ 422; count II).

A jury found appellant guilty of one felony stalking count (count I for the July 1 to December 1, 1992, period), not guilty of the terrorist threat count, and was unable to reach a verdict on the other felony stalking count (11 to 1 for guilty). The trial court sentenced appellant to the upper three-year state prison term.

### DISCUSSION

1. *The requisite intent for stalking.*

The trial court gave this felony stalking instruction:

"Defendant is accused in Counts 1 and 3 of the information of having committed the crime of felony stalking, a violation of Section 646.9(b) of the Penal Code.

"Every person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear of death or great bodily injury, when there is a temporary restraining order, or an injunction, or both, in effect prohibiting such behavior against the same party, is guilty of the crime of felony stalking in violation of Penal Code Section 646.9(b).

"In order to prove such crime, each of the following elements must be proved:

"1. A person willfully, maliciously, and repeatedly followed or harassed another person;

"2. The person following or harassing made a credible threat against the life of, or to cause great bodily injury to, the other person;

"3. The person who made the threat did so with the specific intent to place the other person in reasonable fear of death or great bodily injury;

"4. A court had previously issued a temporary restraining order, injunction, or both, prohibiting such behavior against the same other person, and

"5. The temporary restraining order, or injunction, or both, were in effect at the time of the conduct described in elements 1, 2 and 3.

" 'Harasses' means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause emotional distress to the person. 'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose.

" 'A credible threat' means a threat made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his, or her safety. The threat must be against the life of, or a threat to cause great bodily injury to, a person. Great bodily injury means a significant or substantial physical injury." (CALJIC No. 9.16 (1991 new).)

■ During deliberation, the jury asked for a clarification of "credible threat." Their question was "do we need to show that intent to carry out the threat exists or just that the intent to cause the person fear exists?"[2]

Over defense objection, the trial court answered the question by repeating part of the already given instruction and adding, *"it is not required that the person making the threat actually intended to carry out the threat."*

Appellant contends this added instruction is erroneous and "directly contrary to the statutory definition of 'credible threat' contained in Penal Code, section 646.9[, subdivision] (e)." Appellant is mistaken.

As we explain, when the provisions of the statute are "construed according to the fair import of their terms, with a view to effect its objects and to promote justice" (§ 4) it is clear no intent to kill or cause great bodily injury is required.

■ We apply the following established principles in construing the subject statute. The " 'fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]' [Citation.] In determining this intent, courts look first to the words contained in the statute, giving them their usual and ordinary meaning." (*People* v. *Hull* (1991) 1 Cal.4th 266, 271 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) "[T]he various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute." (*Nunn* v. *State of California* (1984) 35 Cal.3d 616, 625 [200 Cal.Rptr. 440, 677 P.2d 846].) " ' "[L]anguage of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' " (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) "Statutory language must be read in context, keeping in mind the nature and purpose of the enactment, and must be given such interpretation as will promote rather than defeat the objective of the law. [Citation.] In ascertaining legislative intent, not only the statutory language should be considered; we should also take into account the object of the legislation, the evils to be remedied, the legislative history, public policy and other matters helpful in discerning the intended meaning of the words used." (*Clinton* v. *County of Santa Cruz* (1981) 119 Cal.App.3d 927, 933 [174 Cal.Rptr. 296].)

■ As pertinent, in 1992 section 646.9 read: "(a) Any person who willfully, maliciously, and repeatedly follows or harasses another person and

---

[2]The jury note stated: "p. 26 of instructions, definition of credible threat: Concerning 'intent', do we need to show that intent to carry out the threat exists or just that the intent to cause the person fear exists?"

who makes a credible threat with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking, . . .

"(b) Any person who violates subdivision (a) when there is a temporary restraining order or an injunction, or both, in effect prohibiting the behavior described in subdivision (a) against the same party, is punishable by imprisonment in a county jail for not more than one year or by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment, or by imprisonment in the state prison.

". . . . . . . . . . . . . . . . . . . . . . . .

"(d) For the purposes of this section, 'harasses' means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person. 'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.'

"(e) For the purposes of this section, 'a credible threat' means a threat made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety. The threat must be against the life of, or a threat to cause great bodily injury to, a person as defined in Section 12022.7."

The Legislature enacted this law in 1990 as a response to the shooting of actress Rebecca Schaeffer and the murders, within a month and a half, of four Southern California women. Each of the four women "had obtained a temporary restraining order and [had] communicated to her family, friends, and police that she thought she was going to be killed." (Comment (1993) 24 Pacific L.J. 1945, fns. 4, 5.) It was the first antistalking criminal statute in the United States. (*Id.* at p. 1945.) Many states soon passed similar statutes. (*Id.* at p. 1946, fn. 6.)

The need for an antistalking criminal statute had been demonstrated. Restraining orders and requests for police help had not saved the lives of these four women. Existing criminal statutes were inadequate. Section 422 required an "unequivocal, unconditional, immediate" threat of death or great bodily injury. Section 653m, although prohibiting threatening or obscene telephone calls, was only a misdemeanor, thus making arrest and prosecution difficult. (See § 836, subd. (a)(1).)

Section 646.9 addressed "two distinct behaviors . . . repeated *following* or . . . *harassment.*" (*People* v. *Heilman* (1994) 25 Cal.App.4th 391, 399, [30 Cal.Rptr.2d 422], original italics deleted and new italics added.) Both behaviors required multiple acts. (§ 646.9, subd. (d).) Each behavior also required the making of "a credible threat with the intent to place that person in reasonable fear [of death or great bodily injury]." (§ 646.9, former subd. (a).) Additionally, quite apart from the perpetrator's *intent* to induce fear, the victim must actually fear death or great bodily injury and that fear must be reasonable. (§ 646.9, subd. (e).)

Appellant contends the statute contains still another element, an intent to carry out the threat. The contention is based upon section 646.9, subdivision (e) and the word "intent."

In 1992, subdivision (e) read: "For the purposes of this section, 'a credible threat' means a threat made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety. The threat must be against the life of, or a threat to cause great bodily injury to, a person as defined in Section 12022.7." (§ 646.9, subd. (e).)

In pertinent part, appellant would read the subdivision this way: " '[A] credible threat' means a threat made with the intent . . . to carry out the threat . . . ."

We are satisfied such a reading of the statute is unreasonable and was not intended by the Legislature. We explain.

In describing the prohibited conduct, section 646.9, subdivision (a) specifies the elements of the crime as: (1) repeatedly following or harassing another person and (2) making a credible threat (3) with the intent to place that person in reasonable fear of death or great bodily injury. Absent is any indication of *another* intent element, an intent to carry out the threat. The entire focus is upon a course of conduct *intended* to cause someone to fear for their life and which succeeds in causing that fear.

That this *was* the entire focus of the statute is evidenced by the definition of "harasses." Section 646.9, subdivision (d) defines "harasses" as "a knowing and willful course of conduct . . . which seriously alarms, annoys, or harasses the person . . . ." Absent is any indication this course of conduct must be accompanied by an intent to kill or injure. The subdivision further states the "course of conduct must . . . cause a reasonable person to suffer substantial emotional distress . . ." and consists "of a series of acts . . .

evidencing a continuity of purpose." Again, no suggestion of an intent to kill or injure.

Section 646.9, subdivision (e), reasonably read, is entirely consistent with the rest of the statute and harmonious with subdivision (a). In pertinent part, subdivision (e) read: " '[A] credible threat' means a threat made with the intent . . . to cause the person who is the target of the threat to reasonably fear for his or her safety." This is the identical intent described in subdivision (a): "the intent to place that person in reasonable fear of death or great bodily injury . . . ."

Additionally, appellant's suggested construction makes nonsense of the remainder of the sentence. It would read: " '[A] credible threat' means a threat made with the intent . . . to carry out the threat *so as to cause the person . . . to reasonably fear for his or her safety.*" An "intent to carry out a threat" has no logical connection with "to cause the person to reasonably fear for his or her safety."

Our conclusion is consistent with *People* v. *Heilman, supra,* 25 Cal.App.4th 391. In analyzing the statute's elements to determine what restraints on arbitrary and discriminatory enforcement (*id.* at p. 400) it contained, *People* v. *Heilman* identified a single intent: "the specific intent to place the victim in a reasonable fear of death or great bodily harm." (*People* v. *Heilman, supra,* 25 Cal.App.4th at p. 401.)

To construe into the statute an "intent to carry out the threat" element would largely thwart the statute's purpose. Stalkers could terrorize victims with impunity by merely threatening "I might kill you; I haven't decided yet."

The Legislature intended no such result. In 1992 it strengthened the statute by including threats to "immediate family," increased punishment for second offenders, and authorized 10-year restraining orders. (Stats. 1992, ch. 627, § 1.) In 1993 the statute was further strengthened. Death and great bodily injury threats were replaced by a threat to a person's safety. Punishments were increased. "Torments" was added to the definition of "harasses." "Credible threat" was expanded to include "a threat implied by a pattern of conduct." And "immediate family" was expanded. (Stats. 1993, ch. 581 § 1.)

In 1994 the Legislature again amended the statute requiring that victims be notified when convicted stalkers were released from custody. It also added a provision that "[t]he present incarceration of a person making the

threat shall not be a bar to prosecution . . . ." (Stats. 1994, ch. 931, § 1.5; Stats. 1993, First Ex. Sess. 1993-1994, ch. 12, § 1.)

Our interpretation is consistent with related statutes. Code of Civil Procedure section 527.8 authorizes an employer to seek a temporary restraining order and injunction if an employee has suffered "a credible threat of violence." Such a threat is defined as "a knowing and willful statement or course of conduct which would cause a reasonable person to believe that he or she is under threat of death or serious bodily injury, and which is intended to, and which actually causes, a person to believe that he or she is under [such] threat . . . ." Civil Code section 1708.7 creates a tort action for stalking and defines "credible threat" as "a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family."

For these reasons we conclude that a "credible threat," as defined in section 646.9, does not require an intent to carry out the threat.

2. *Lesser included and lesser related instructions.*

■ Appellant expressly requested that neither lesser included nor lesser related instructions be given. During jury deliberations, when the trial court informed counsel how it would answer the jury's question concerning intent, appellant changed his mind and requested both (§§ 653m, subd. (a), 166, subd. (a)(4)).

As the trial court correctly observed, "I think [the request] comes too late. [¶] This would be prejudicial to the People at this point. Both of you argued the case based on what the instructions were that we were giving and the agreement not to ask for the lesser included or lesser related offenses."

There was no error.

3. *Definition of "harasses."*

■ Appellant claims prejudicial error because the trial court omitted the italicized word in its instruction: " 'Harasses' means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose. The

course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and must actually cause *substantial* emotional distress to the person."

We find the error harmless. (*Rose* v. *Clark* (1986) 478 U.S. 570, 577 [92 L.Ed.2d 460, 470, 106 S.Ct. 3101]; *People* v. *Mason* (1991) 52 Cal.3d 909, 952 [277 Cal.Rptr. 166, 802 P.2d 950].)

4. *Exclusion of character witness.*

█ The trial court excluded the testimony of Robert Krasnow, a psychiatrist who had treated appellant and who was a friend of appellant. Dr. Krasnow would have given character evidence, namely, that appellant was not a violent person. The trial court properly excluded the evidence as cumulative and, because Dr. Krasnow could not separate the friendship and psychiatric bases for his opinion, potentially violative of sections 28 and 29. (These sections restrict evidence of mental disease, mental disorder, etc.)

Additionally, since intent to kill or cause great bodily injury was not an element of the crime, the proferred evidence was irrelevant.

5. *Imposition of upper term.*

█ A single factor in aggravation will support imposition of an upper term. (*People* v. *Castellano* (1983) 140 Cal.App.3d 608, 615 [189 Cal.Rptr. 692].) The trial court relied upon more than one factor: the crime was carried out with planning and sophistication; the acts involved a high degree of viciousness and callousness. Further, although not expressly enumerated as a circumstance in aggravation (Cal. Rules of Court, rule 421), the trial court properly relied on the egregiousness of the crime. Other circumstances in aggravation were also present: the victim was particularly vulnerable to stalking because, as a model, he needed to maintain a telephone.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., concurred.

JOHNSON, J., Concurring and Dissenting.—I concur in the majority's holdings that no lesser offense instructions were required, error regarding the

definition of "harasses" was harmless and selection of the upper term was appropriate.[1] I respectfully dissent from the majority's holding that Penal Code section 646.9 does not require an intent to carry out a threat. (Maj. opn., *ante*, at pp. 1234-1240.) The majority expends significant energy indulging in statutory construction in a case where such analysis is unwarranted. Furthermore, the result of this analysis has effectively rewritten the statute to delete the "credible threat" as an element of the offense.

There is no need for statutory interpretation since Penal Code section 646.9 is clear and unambiguous. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288]; *People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380].) The 1992 version of the section provided, in relevant part, that "[a]ny person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking . . . ." In relevant part, a "credible threat" was defined as:

1) ". . . *a threat made with the intent . . . to carry out the threat . . .*" and

2) ". . . a threat made with . . . the apparent ability to carry out the threat,"

3) ". . . [thereby causing] the person who is the target of the threat to reasonably fear for his or her safety." (Pen. Code, § 646.9, subd. (e), italics added.)[2]

The response to the jury's question that "[I]t is required that a person had the intent to threaten the victim . . . . [¶] It is not required that the person making the threat actually intended to carry out the threat" effectively

---

[1] I also concur with that portion of the majority opinion upholding exclusion of Dr. Krasnow's testimony as cumulative. I do not join in the subsequent observation that evidence of good character is "irrelevant" because "intent to kill or cause great bodily injury was not an element of the crime." (Maj. opn., *ante*, p. 1241.) This observation is unnecessary to the decision and represents a fundamental misperception of good character evidence. It is no longer subject to question that "[g]ood character for the traits involved in the commission of the crime[s] charged may be sufficient by itself to raise a reasonable doubt as to the guilt of a defendant. It may be reasoned that a person of good character as to such traits would not be likely to commit the crime[s] of which the defendant is charged." (CALJIC No. 2.40 (5th ed. 1988); *People* v. *McAlpin* (1991) 53 Cal.3d 1289, 1310-1311 [283 Cal.Rptr. 382, 812 P.2d 563].)

[2] Subdivision (e) provided at the time of the offense: "For the purposes of this section, 'a credible threat' means a threat made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety. The threat must be against the life of, or a threat to cause great bodily injury to, a person as defined in Section 12022.7."

removed from the jury's consideration the "intent to carry out the threat" element of "credible threat." This being the case, the error was reversible because no other instructions required a finding on the missing intent element and the jury may well have convicted the defendant without having found each element of the offense. (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 725, 726 [224 Cal.Rptr. 719, 715 P.2d 680].)[3]

For the foregoing reasons, I would reverse the judgment.

Appellant's petition for review by the Supreme Court was denied December 14, 1995.

---

[3]The majority's reliance upon *People* v. *Heilman* (1994) 25 Cal.App.4th 391 [30 Cal.Rptr.2d 422] is misplaced. There the court, in relevant part, considered only the term "repeatedly" in the face of a vagueness challenge. (*Id.* at pp. 398-401.) The court did not consider the element of "credible threat." (*Id.*, at p. 399, fn. 4.)