[No. B094434. Second Dist., Div. Five. July 15, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID SOTOMAYOR, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of subparts A through D and F through H of part IV.

**COUNSEL**

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Pamela C. Hamanaka and Alan D. Tate, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

David Sotomayor, defendant, appeals from a judgment of conviction, after a jury trial, of stalking when a restraining order was in effect prohibiting his behavior. (Pen. Code, § 646.9, subd. (b).)[1] The court found defendant had sustained three prior serious felony convictions within the meaning of subdivisions (b) through (i) of section 667. He was sentenced to 25 years to life in state prison. (§ 667, subd. (e)(2)(A)(ii).) We affirm the judgment of conviction. However, we modify defendant's presentence custody credits. Further, we remand for reconsideration of the sentence pursuant to *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 530, fn. 13 [53 Cal.Rptr.2d 789, 917 P.2d 628].

## II. THE STALKING STATUTE

At the time defendant committed the present offense, section 646.9, concerning stalking, provided: "(a) Any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family, is guilty of the crime of stalking, . . . [¶] (b) Any person who violates subdivision (a) when there is a temporary restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party, shall be punished by imprisonment in the state prison . . . . [¶] . . . [¶] (d) For the purposes of this section, 'harasses' means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, torments, or terrorizes the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person. 'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.' [¶]

---

[1] All further statutory references are to the Penal Code except where otherwise noted.

(e) For the purposes of this section, 'credible threat' means a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family. . . ." (Stats. 1993, ch. 581.)

The current version of section 646.9, as amended in 1995 (Stats. 1995, ch. 438), contains the following definition of "credible threat": "(g) For the purposes of this section, 'credible threat' means a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct made with the intent *to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family and made with* the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. *It is not necessary to prove that the defendant had the intent to actually carry out the threat.* . . ." The Legislature declared the amendments to subdivision (g) were declaratory of existing law. (Stats. 1995, ch. 438.) The amendments were a codification of the holding of the Court of Appeal in *People* v. *Carron* (1995) 37 Cal.App.4th 1230, 1240 [44 Cal.Rptr.2d 328].

## III. FACTS

### A. *The Evidence at Trial*

We summarize the evidence in the light most favorable to the prosecution. (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573-574, 99 S.Ct. 2781]; *Taylor* v. *Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909; *People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110].) Between October 24, 1994, and December 5, 1994, the relevant dates as alleged in the information, defendant, who had been married to the victim for 11 years, repeatedly harassed her despite a restraining order being in effect. He telephoned her place of employment two or three times every day and sometimes more often. One of Mrs. Sotomayor's co-employees, Erica Hertz, testified that during one of these calls defendant was irritated, raised his voice, and used profanity. Mrs. Sotomayor expressed fear for her safety and for the security of her job. Defendant also came into the shop where Mrs. Sotomayor worked on one occasion. He demanded to know, " 'Which one [of you] is Erica?' " The visit left his wife, who was present, afraid and very upset.

On November 21, 1994, defendant arrived at his wife's home, owned by her parents, with a locksmith, apparently intending to change the locks on the house. Monrovia Police Officer Enrique Resendez responded to a telephone call from Mrs. Sotomayor and arrived at her home. He told defendant to leave. Mrs. Sotomayor called a friend, Nannette Kingslan, and asked her to come over. When Ms. Kingslan arrived, Mrs. Sotomayor was shaking and scared. On other occasions when Ms. Kingslan was present, defendant had yelled profanities and once threatened to have one of their dogs put to sleep.

Two weeks later, on December 4, 1994, Officer Resendez again responded to a telephone call concerning a violation of a restraining order at Mrs. Sotomayor's address. When he arrived at Mrs. Sotomayor's home, she was nervous and upset. When the telephone rang, Mrs. Sotomayor picked it up and handed the phone to Officer Resendez. When Officer Resendez identified himself, the person on the other end hung up. The phone rang two more times while Officer Resendez was present; both times he answered the telephone but got no response from the caller. Telephone records showed defendant called his wife's house 18 times on December 4. Defendant told her, " 'So long as we're both living and breathing, I'm going to give you problems.' "

The next day, December 5, 1994, defendant telephoned his wife a total of 19 times. Furthermore, he arrived at her home at 11:40 a.m. He sat in his truck and repeatedly called her from his cellular phone. Then he came to the door and said, " 'Life is so miserable that you can't even answer a phone or come to the door?' " Mrs. Sotomayor telephoned the police. The police dispatcher testified Mrs. Sotomayor sounded angry and concerned. She told the dispatcher defendant was yelling at her through the door. Police officers detained defendant and Mrs. Sotomayor made a citizen's arrest. Officers repeatedly warned defendant that because of the restraining order he was not to contact his wife or return to her house. Mrs. Sotomayor told a police officer she was afraid because defendant had threatened to rape her and her mother; she was afraid defendant would kill them.[2] Ms. Kingslan testified she spoke to Mrs. Sotomayor on the telephone and she "sounded panicky." Defendant was released from police custody at 1:15 p.m. Forty-five minutes later, at 2 p.m., defendant returned to his wife's house. Just prior to his arrival there, he called his wife and said, " 'You're dead meat.' " Mrs. Sotomayor believed defendant would carry out that threat. She thought he meant to kill her. Her niece, who was at home with her, was also afraid. When Monrovia Police Officer Ron Brunn arrived, defendant was arguing with Mrs. Sotomayor. Defendant was arrested by police officers at 2:05 p.m. His wife "was crying and real scared . . . frightened, very frightened."

---

[2]These statements were admitted as evidence of Mrs. Sotomayor's state of mind.

Mrs. Sotomayor testified at the preliminary hearing she feared defendant generally because: he was a big, strong man, who had, in the recent past, struck her with the palm of his hand on her forehead, showed anger and rage toward her, and bruised her by grabbing her. This led her to obtain a restraining order against him. The court took judicial notice that a temporary restraining order was issued and took effect on October 18, 1994. It was served on defendant on October 24, 1994. Defendant was restrained from "contacting, molesting, attacking, striking, threatening, sexually assaulting, batter[ing], telephon[ing] or disturbing the peace of [Mrs. Sotomayor] and [defendant] was precluded from coming within 100 yards of the family home, or [Mrs. Sotomayor's place of business]." The temporary restraining order remained in effect until November 10, 1994, at which time a permanent restraining order was issued and took effect. Defendant was served with the permanent restraining order on November 21, 1994. The jury was so advised. Defendant described his conduct as merely attempting to "get back with his wife."

## B. *Additional Facts Before the Court at the Time of Sentencing*

Defendant committed robberies on three separate occasions in 1979—July 8, 1979, August 16, 1979, and September 6, 1979. Also, the probation report indicated he had "aggressively assaulted" his wife in the past. Awaiting trial, the probation report indicated defendant pressured his wife into refusing to testify and blamed her for his incarceration. In addition to this effort to dissuade Mrs. Sotomayor from testifying, although it does not appear in the probation officers' report, there was evidence defendant subsequently had been charged with being a felon in possession of a gun. The record also reflects defendant was a user of methamphetamines and was involved in drug trafficking, according to his wife. The probation officer indicated: "This defendant is a big, strong individual who apparently is not able to take rejection without resorting to violence against the rejector. When that person is a female, it becomes a very dangerous situation because of the defendant's size and strength and of the female victim's petite size and vulnerability. In this kind of relationship the death of the victim is always a distinct possibility. This is the kind of situation that has developed in the instant matter and the defendant, even though the victim got restraining orders, was unable to stay away from her. . . . Even when interviewed, he expressed no remorse for his actions and merely stated that he had 'been trying to get back with her.'" The probation officer found as circumstances in aggravation: the offense involved the threat of great bodily injury; the crime was premeditated; and defendant's prior convictions as an adult are of increasing seriousness. The probation officer found as a circumstance in mitigation that defendant had previously performed on parole in a satisfactory manner.

## IV. Discussion

A.-D.*

. . . . . . . . . . . . . . . . . . . . . . . . .

### E. *Remand for Reconsideration of Sentence*

 Defendant argues his sentence must be reversed because the court erroneously concluded, in ruling on his *pretrial* motion to strike the prior serious felony conviction allegations, that it had no discretion to do so. While this appeal was pending, the Supreme Court issued its opinion in *People* v. *Superior Court (Romero), supra,* 13 Cal.4th 497. The Supreme Court held that in cases charged under section 667, subdivisions (b) through (i), ". . . a court may exercise the power to dismiss granted in section 1385, either on the court's own motion or on that of the prosecuting attorney . . . ." (13 Cal.4th at p. 504.) The court also held its opinion was fully retroactive. It stated: "A defendant serving a sentence under the Three Strikes law . . . imposed by a court that misunderstood the scope of its discretion to strike prior felony conviction allegations in furtherance of justice pursuant to section 1385[, subdivision (a)], may file a petition for habeas corpus to secure reconsideration of the sentence. [Citation.]" (*Id.* at p. 530, fn. 13.) The court noted, however: "Such a petition may be summarily denied if the record shows that the sentencing court was aware it possessed the discretion to strike prior felony conviction allegations without the concurrence of the prosecuting attorney and did not strike the allegations, or *if the record shows that the sentencing court clearly indicated that it would not, in any event, have exercised its discretion to strike the allegations. (People* v. *Belmontes* [(1983)] 34 Cal.3d [335,] 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686].)" (*Ibid.,* italics added.)

 As noted, the Supreme Court held *Romero* was fully retroactive, and it addressed remedy in the context of a habeas corpus petition. However, the court failed to address the retroactive application of *Romero* to a large number of pending cases on direct appeal.[5] We cannot conceive of any basis for differentiating the retroactive application of *Romero* to a defendant

---

*See footnote, *ante,* page 382.

[5]*Romero* reached the Supreme Court on the district attorney's petition for a writ of mandate. The prosecution sought to require the superior court to vacate its order striking prior felony conviction allegations. The defendant in *Romero* had pled guilty after the trial court indicated it was willing to consider striking the prior felony conviction allegations. The Supreme Court concluded: "Under these circumstances, the appropriate remedy is to vacate the judgment, to permit defendant to withdraw his plea, and otherwise to proceed in conformity with this opinion. If, on remand, the trial court again decides to exercise its

whose direct appellate rights have been exhausted or were never utilized from its applicability to an accused whose appealispending. ■ Therefore, we conclude that on direct appeal, a defendant serving a prison term pursuant to section 667, subdivisions (b) through (i), imposed "by a court that misunderstood the scope of its discretion to strike prior felony conviction allegations in furtherance of justice" (*People* v. *Superior Court (Romero), supra,* 13 Cal.4th at p. 530, fn. 13) is entitled to a remand for reconsideration of the sentence. Of course, as mandated by *Romero,* remand is inappropriate if the record "clearly indicated [the sentencing court] would not, in any event, have exercised its discretion to strike the allegations." (*Ibid.*)

■ In the present case, Judge Charles C. Lee ruled on defendant's *pretrial* motion to strike the prior serious felony conviction allegations. Judge Lee expressly stated that even if he *did* have discretion to strike those allegations, *he would not do so in this case.* The court stated: "Regarding the motion to strike the enhancements, I don't think I have discretion to strike them and if I did I would not in this case in any event." Judge Lee also stated: "Regarding the motion to dismiss the strike enhancements I don't think I have the authority and again if I had it which I don't, I wouldn't exercise it here." Hence, there is no basis in the record with regard to defendant's *pretrial* motion for remanding this matter for resentencing. It is clear Judge Lee would not have exercised his discretion to strike the prior serious felony conviction allegations. (*People* v. *Superior Court (Romero), supra,* 13 Cal.4th at p. 530, fn. 13; *People* v. *Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686].)

Defendant did not formally and explicitly renew his motion to strike or dismiss the prior serious felony conviction allegations at the time of sentencing. Now retired Judge George Xanthos sentenced defendant. In *People* v. *Superior Court (Romero), supra,* 13 Cal.4th at page 530, footnote 13, the Supreme Court held, as discussed above, "A defendant serving a sentence under the Three Strikes law . . . *imposed by a court that misunderstood the scope of its discretion to strike prior felony conviction allegations in furtherance of justice* pursuant to section 1385[, subdivision (a)] . . . ." may seek reconsideration of the sentence. (Italics added.) Notably, the Supreme Court did not say a defendant seeking reconsideration of sentence must show he or she had brought a motion to strike the allegations in the trial court. ■ Moreover, the lack of such a requirement is logical given that the

discretion to strike the prior felony conviction allegations in furtherance of justice under the standards articulated above and in the relevant case law, the court must set forth the reasons for that decision in strict compliance with section 1385[, subdivision (a)]. Any such decision will be reviewable for abuse of discretion according to the procedures generally applicable to such decisions." (*People* v. *Superior Court (Romero), supra,* 13 Cal.4th at p. 532.)

sentencing court has authority to strike such allegations *on its own motion.* In other words, a sentencing court believing it had no discretion to strike prior serious or violent felony conviction allegations would not do so on its own motion. Therefore, in cases where the record actually reflects the sentencing judge misunderstood the scope of her or his discretion pursuant to section 1385, subdivision (a), we conclude a motion to strike the prior serious felony conviction allegations in the trial court is not a prerequisite to obtaining reconsideration (by way of a habeas corpus petition or on direct appeal) of a sentence imposed pursuant to section 667, subdivisions (b) through (i).[6]

 Two facts emerge from a reading of the sentencing record as a whole, including defendant's sentencing memorandum and counsel's arguments, which indicate Judge Xanthos was unaware of his sentencing discretion. First, defendant urged the court not to apply section 667, subdivisions (b) through (i) to him. Second, Judge Xanthos believed he had no discretion to strike or dismiss the prior serious felony conviction allegations. Moreover, Judge Xanthos's comments at sentencing suggest he would have been inclined to strike or dismiss the prior conviction allegations if he had the discretion to do so. Under these circumstances, based on the explicit direction of the California Supreme Court, this case must be remanded for reconsideration of defendant's sentence. (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 530, fn. 13.)

Although this is an extremely serious matter, we express no opinion whether it would be an abuse of discretion to strike one or more of the prior serious felony conviction allegations in this case. We note, however, that as explained in *Romero,* a court abuses its discretion if it is " 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' [Citation.]" (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 531.)[7]

F.-H.*

. . . . . . . . . . . . . . . . . . . . . . .

---

[6]We do not address the question of whether reversal of a sentence and remand is available when the record does not actually reflect that the sentencing judge misunderstood the scope of her or his discretion. Our holding is limited to the facts of this case.

[7]In order for defendant's sentence to be affected, two prior serious felony convictions must be stricken.

*See footnote, *ante*, page 382.

# V.

## DISPOSITION

The judgment of conviction is affirmed. The judgment is modified to reflect 180 days of actual custody credit, 90 days of conduct credit, and a total of 270 days of presentence custody credit. The matter is remanded for reconsideration of defendant's sentence pursuant to *People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at page 530, footnote 13.

Grignon, J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied August 5, 1996, and appellant's petition for review by the Supreme Court was denied October 16, 1996.