[No. A070625. First Dist., Div. One. Sept. 30, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
BIEN DeGUZMAN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the following portions of this opinion are certified for publication: introductory paragraph, Background, and the portion of the Discussion entitled "Trial Court Discretion to Strike Prior Convictions."

COUNSEL

Richard L. Rubin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, and Catherine A. Rivlin, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

STEIN, Acting P. J.—Bien DeGuzman was found guilty of the robbery and false imprisonment of Keri Witman. Appellant had entered her home, tied her up, threatened her with a knife and stole numerous items from her home, including her car and automated teller machine (ATM) bank card. In addition, he was found to have suffered three prior "three strike" convictions, three prior serious felonies and a prior prison term. He was sentenced to three consecutive life terms in prison under the three strikes law and he appeals. He argues that the prosecutor committed misconduct and raises four issues regarding the three strikes law, one of which has recently been resolved by our Supreme Court in *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

BACKGROUND

On July 8, 1994, at 10:30 a.m. Keri Witman was home alone reading in bed when she heard the doorbell. She called down, no one answered and she went back to the bedroom, but returned to the hallway when she heard a noise. When she encountered a man in the hall carrying her stereo under one arm and holding a knife, she told him to take whatever he wanted and not to hurt her. He told her to go back to her room and lie facedown on the bed and proceeded to question her about the location of her belongings including cash, a laptop computer, her car and the personal identification number for her ATM card. Witman cooperated by furnishing the information. At one point, the intruder cut the telephone cords and tied her hands and feet. He asked her for boxes or bags to carry her belongings. When he got ready to leave, he told her that he had an armed partner who would hurt her if she moved after he left or if she had lied to him. Eventually, Witman got loose and called the police from a market.

Witman was unable to identify appellant at trial, but confirmed that he looked like the man who robbed her. The intruder had been wearing a blue bandanna, which Witman identified when police recovered it from appellant

when he was arrested. She identified appellant from pictures on a videotape taken when appellant used her ATM card at the bank.

Edith Boone, an artist, was working on a mural near Witman's apartment at the time of the robbery and saw a man carrying a television, suitcase and a bag over his shoulder. The man, who was "stressed out" and perspiring, offered Boone $5 to help him carry the things to his car. Boone identified appellant in court as the man on the street.

On the following day, appellant asked Tony Paul to pawn a laptop computer for him. Paul pawned the computer, received $40 for himself and delivered $100 to appellant's girlfriend. The computer, which was subsequently recovered from the pawnshop, belonged to Witman. On July 11, 1994, appellant was arrested in Witman's stolen car. Deborah Smith was driving. The officers found plastic "baggies" containing cocaine in the car. On the way to the police station, appellant admitted to the police that he was hiding the cocaine when he was pulled over. Deborah Smith testified that appellant picked her up in Witman's car and they went to get some drugs. Prior to being arrested, they stopped at the King's Hotel, a place she knew as a drug hotel. Police recovered a blue suitcase containing papers belonging to Witman from the King's Hotel.

An information was filed on November 7, 1994, charging appellant with the following crimes: count 1, robbery in a dwelling house (Pen. Code, § 212.5, subd. (a));[1] count 2, false imprisonment (§ 236); count 3, first degree burglary (§ 459); and use of a knife in counts one through three ($12022, subd. (b)); count 4, willful destruction of telephone equipment (§ 591); count 5, grand theft of a vehicle (§ 487h, subd. (a)); counts 6 through 8, second degree burglaries of Bank of America (§ 459); count 9, vehicle theft (Veh. Code, § 10851); and count 10, transportation or sale of cocaine (Health & Saf. Code, § 11352, subd. (a)). The information also alleged three prior serious felonies under section 667, subdivisions (d) and (e) (three strikes law); the same three prior serious felonies under sections 667 and 1192.7, and a different prior prison term under section 667.5, subdivision (b). Counts 4 and 5 were dismissed on motion of the prosecutor and count 10 was reduced to simple possession of cocaine.

The jury convicted appellant of all remaining counts and found the prior convictions and prior prison term to be true. Appellant was sentenced to three consecutive terms of 25 years to life on counts 1, 6 and 10 and an additional 17 years on the enhancements. Sentence on the remaining counts was stayed.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

## Discussion*

. . . . . . . . . . . . . . . . . . . . . . . . .

*Trial Court Discretion to Strike Prior Convictions*

Appellant's next contention, that the three strikes law is invalid unless construed to allow trial courts to retain their power to strike prior convictions under section 1385, has been validated by the Supreme Court in *People v. Superior Court (Romero)*, *supra*, 13 Cal.4th 497.[5] ■ Appellant, however, asks that we vacate his sentence and remand to the trial court with instructions that the court has the power to strike the prior convictions under section 1385. Respondent's brief in the instant case states that the trial court "correctly concluded that it had no discretion to strike a 'strike.'" We have reviewed the entire record, however, and the trial court did not expressly make such a conclusion. The parties apparently infer the court's intent by the fact that it did not strike the prior convictions, but the record does not indicate how the trial court perceived its authority to strike the priors. Counsel argued that one of the priors should be stricken due to its constitutional infirmity and the court ruled against him. Neither counsel argued that the priors should be stricken under section 1385 and the record is silent as to the court's intent, aside from the trial court's comment that it could not, and would not, grant probation. There is nothing in the record from which we can make any conclusion regarding the trial court's awareness of its discretion, or how it would have exercised its discretion if it had known the discretion existed. (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686] [court that is unaware of scope of discretion cannot properly be said to exercise discretion].)

■ "It is generally presumed that a trial court has followed established law [citation], but this presumption does not apply where the law in question was unclear or uncertain when the lower court acted [citations]." (*People v. Jeffers* (1987) 43 Cal.3d 984, 1000-1001 [239 Cal.Rptr. 886, 741 P.2d 1127].) For example, following sentencing of the defendant in *People v. Chambers* (1982) 136 Cal.App.3d 444 [186 Cal.Rptr. 306], the Supreme Court determined that trial courts had authority to dismiss special circumstance findings. Noting that a remand for resentencing would be appropriate in a case in which the trial court indicated that it wanted to strike the finding

---

*See footnote, *ante*, page 1049.

[5]Although the publication of *Romero* eliminates the need for us to engage in an in-depth review of the legislative history of the three strikes provisions, respondent has asked us to take judicial notice of ballot arguments, the analysis of the Senate Committee on the Judiciary and a letter from the Legislative Counsel regarding the effect of the provisions. The motion is granted.

but believed it was without power to do so, the court also considered a situation similar to the instant case. The court stated that where the law had not established that the discretion existed, "and in the absence of any suggestion in the record that the trial court exercised its discretion, the usual presumption that the trial court considered the various alternatives and acted correctly . . . can have no logical application." (*People* v. *Chambers*, *supra*, 136 Cal.App.3d, 444, 457.)

Because of the procedural posture in which the *Romero* case arose, upon review of a decision granting the People's petition for a writ of mandate, the disposition in that case has left the Courts of Appeal without guidance in resolving similar cases still pending on direct appeal. One court has concluded that in all pending cases where the trial court expressed its belief that it had no discretion and was required to impose sentence under the statutory scheme, the judgment must be vacated and the matter remanded to the trial court for a new sentencing hearing. (*People* v. *Metcalf* (1996) 47 Cal.App.4th 248 [55 Cal.Rptr.2d 164].) Other courts have ordered remand for reconsideration of the sentence only where the trial court expressed some sympathy with the appellant's argument that his sentence was too harsh. (*People* v. *Sotomayor* (1996) 47 Cal.App.4th 382 [54 Cal.Rptr.2d 871]; *People* v. *Rodriguez* (1996) 47 Cal.App.4th 424 [54 Cal.Rptr.2d 801] review granted October 23, 1996 (S055670).)[6]

■■■ No court has addressed the situation presented in this case. Although silent as to the trial court's belief in its authority to dismiss the alleged prior convictions without the concurrence of the prosecuting attorney, this record establishes that it would have been a manifest abuse of the trial court's limited discretion to strike appellant's prior felony conviction allegations "in furtherance of justice" under section 1385. Appellant admitted to the probation officer that he had a fairly extensive juvenile record beginning at age nine. In 1969, at age 18, he was convicted of 2 counts of robbery (§ 211) and was committed to the California Youth Authority. He was discharged from parole in 1974 but again convicted in 1979 of robbery (§ 211) and robbery of a common carrier (§ 211a) with use of a firearm (§ 12022.5) and sentenced to state prison. He was paroled in March 1982 and arrested three months later for burglary (§ 459). He was subsequently convicted of those charges and returned to state prison. He was again paroled in 1983 but was convicted of assault (§ 245, subd. (a)(1)) with a firearm-use

---

[6]The *Rodriguez* court fashioned a limited remand procedure. The trial court was instructed to determine whether or not it would exercise its limited discretion. "If it decides not to exercise its limited discretion, the defendant need not be present and the imposed sentence shall remain in effect. However, if the trial court believes it would not be an abuse of its limited discretion to dismiss one or more 'strikes'—and it wishes to do so—then the defendant must be present and a new sentence hearing conducted." (*People* v. *Rodriguez*, *supra*, 47 Cal.App.4th at p. 431, fn. omitted.)

allegation (§ 12022.5, subd. (a)) in 1990 and returned to prison. He was paroled in June 1992 and absconded from parole in October 1992. He was arrested in July 1994 for the offenses underlying his current conviction: Robbery of an inhabited dwelling (§ 212.5, subd. (a); false imprisonment (§ 236); first degree burglary with use of a deadly weapon (§§ 459, 12022, subd. (b); three counts of second degree burglary (§ 459); auto theft (Veh. Code, § 10851); and transportation of cocaine (Health & Saf. Code, § 11350, subd. (a)). The probation report listed seven circumstances in aggravation and none in mitigation. There is no hint in this record that the trial court ever entertained the slightest thought of leniency toward appellant.

Whether the trial court believed it had discretion to strike the alleged prior felony convictions or not, appellant has suffered no prejudice since it would have been a manifest abuse of that discretion to exercise it on this record. "Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' [Citation.]" (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 531.)[7]

The judgment is affirmed.

Dossee, J., and Swager, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 11, 1996. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

[7]This is not to say appellant is without remedy if his failure to urge extenuating circumstances resulted from the trial court's expression, not reflected on this record, that it had no alternative but to impose the maximum sentence under the three strikes law. He may avail himself of the habeas corpus remedy outlined in *People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at page 530, footnote 13.