Filed 1/26/22  P. v. Triggs CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOYCE TRIGGS,<br><br>    Defendant and Appellant. | B307637<br><br>Los Angeles County<br>Super. Ct. No. BA468085 |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Craig Richman, Judge.  Affirmed in part, sentence vacated, and remanded with directions.

Pilar M. Escontrias under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Blythe J. Leszkay and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Joyce Triggs pleaded no contest to numerous offenses related to her theft of more than $182,000 from her employer. The trial court sentenced her to three years and eight months in prison, which included a one-year enhancement under Penal Code section 186.11.[1]  On appeal, Triggs argues the court erred by imposing the enhancement because section 186.11 references another statute that was repealed in 2018.  She also contends the court erroneously believed it lacked authority to strike the enhancement, grant probation, or decline to impose a restitution fine.  We agree with Triggs that the court erroneously believed it lacked authority to strike the enhancement and grant probation, but we reject her other arguments.  Accordingly, we remand the case for resentencing and affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Triggs began working for TadiBrothers in 2012, and as part of her job she had access to its payroll system.  In 2015, TadiBrothers hired Sara Conley to oversee the company's finances.  Conley audited the payroll system and discovered a little more than $182,000 in fraudulent payments between January 2013 and May 2015.  The payments were made by TadiBrothers and a related company to a bank account belonging to Triggs.

Conley contacted the police, and a detective began investigating the payments.  Triggs later sent an email to the detective pretending to be Conley, claiming she discovered the payments were actually legitimate.

---

[1]     Undesignated statutory references are to the Penal Code.

When Triggs's employer confronted her about the payments, she said another employee was responsible and had threatened her. Triggs quit her job in May 2015, and she told her employer her husband had died. Triggs later admitted her husband was alive and she was responsible for the fraudulent payments. She promised to pay back the money she took.

On January 2, 2018, the People filed an information charging Triggs with identity theft (§ 530.5, subd. (a); count 1), false personation for a written instrument (§ 529, subd. (a)(2); count 2), three counts of grand theft (§ 487, subd. (a); counts 3–5), and money laundering (§ 186.10, subd. (a); count 6). As to the grand theft charges, the People further alleged that Triggs engaged in a related pattern of felony conduct resulting in the loss of more than $100,000, within the meaning of section 186.11, subdivision (a)(3).

On January 7, 2020, Triggs pleaded no contest to the charges and admitted the section 186.11 allegation. The court postponed sentencing because Triggs agreed to make scheduled restitution payments to her employer. Specifically, she agreed to make a $14,000 payment within a week, an $11,000 payment by June, and $2,000 payments each month beginning in February. The court noted if Triggs "fall[s] short on restitution, this is clearly a [state] prison case" and it would not "hesitate to send her to prison . . . ."

Triggs had not made any payments to her employer as of early February 2020. On February 13, 2020, the employer received an envelope from Triggs, but it was empty. It appears Triggs claimed she mailed a check, but someone took it out of the envelope before it got to the employer. The prosecutor believed Triggs was lying.

The court held a sentencing hearing over the course of two days in September 2020. By that time, Triggs had paid her employer $16,000 in restitution. Triggs also presented evidence that she has a compromised immune system due to a skin condition. She asked the court to consider placing her on house arrest or granting her temporary release because of the COVID-19 pandemic.

Triggs's cousin told the court Triggs was raised by an aunt and had a traumatic childhood, but she declined to provide details. She also said there was an excuse for Triggs's behavior and she needed help. The cousin suggested she would need more time to produce evidence proving Triggs's problems.

The probation report showed Triggs has an extensive criminal history. Between 1998 and 2016, she was convicted of petty theft (§ 484, subd. (a)), grand theft (§ 487, subd. (a)), check fraud (§ 476), burglary (§ 459), and embezzlement (§ 503). At the time of the sentencing hearing, she was on probation for the embezzlement offense.

The trial court found the circumstances in aggravation included that the victims were vulnerable, Triggs interfered with the judicial process by committing frauds and lying, her crimes required planning, sophistication, and professionalism, she took advantage of a position of trust, her prior convictions were numerous and of increasing seriousness, and she served a prior prison term. In mitigation, the court found Triggs voluntarily acknowledged wrongdoing at an early stage in the proceedings and her prior performance on probation had been satisfactory. It noted there were many unanswered questions regarding other potential circumstances in mitigation.

4

The court sentenced Triggs to an aggregate term of three years and eight months in prison, consisting of the midterm of two years on count 3, eight months on count 1 (one-third the midterm), and one year for the section 186.11 enhancement. The court imposed the midterm of two years on counts 2, 4, and 5, which it ran concurrently with the sentence on count 3. On count 6, the court imposed the midterm of two years, which it stayed under section 654. The court ordered Triggs to pay $166,461.84 in victim restitution, and it imposed a $300 restitution fine (§ 1202.4, subd. (b)).

## DISCUSSION

1.  ***The trial court properly imposed the section 186.11 enhancement***

Triggs argues the trial court lacked authority to impose a sentencing enhancement under section 186.11, subdivision (a)(3) because the statute references section 12022.6, which was repealed before her case was complete. The Attorney General responds that section 186.11, subdivision (a)(3) continues to be effective because the Legislature intended it to refer to the specific version of section 12022.6 in effect when it was enacted.

We need not decide whether the repeal of section 12022.6 implicitly repealed section 186.11, subdivision (a)(3). Triggs committed her crimes while section 12022.6 was in effect, and, for the reasons discussed below, we conclude its repeal was not retroactive. Any implicit repeal of section 186.11, subdivision (a)(3), therefore, would also not be retroactive. Accordingly, even if section 186.11, subdivision (a)(3) was repealed before Triggs's case was complete, the trial court could nevertheless impose the enhancement on her.

5

*a.    Relevant law*

Under section 186.11, "[a]ny person who commits two or more related felonies, a material element of which is fraud or embezzlement, which involve a pattern of related felony conduct" that results in the loss of more than $100,000 is subject to a sentencing enhancement.  (§ 186.11, subd. (a)(1).)  If the loss is between $100,000 and $500,000, "the additional term of punishment shall be the term specified in paragraph (1) or (2) of subdivision (a) of Section 12022.6."  (§ 186.11, subd. (a)(3).)

The version of section 12022.6[2] in effect when Triggs committed her crimes provided a sentencing enhancement when a person intentionally "takes, damages, or destroys any property in the commission or attempted commission of a felony . . . ."  (§ 12022.6, subd. (a).)  If the loss exceeded $65,000, the court was required to impose an additional one-year term.  (*Id*., subd. (a)(1).)  If the loss exceeded $200,000, the court was required to impose an additional two-year term.  (*Id*., subd. (a)(2).)

The Legislature originally enacted section 12022.6 in 1977, and over the years it amended the statute several times to increase the threshold loss requirements.  (See *People v. Nasalga* (1996) 12 Cal.4th 784, 794 (*Nasalga*); *People v. Medeiros* (2020) 46 Cal.App.5th 1142, 1153 (*Medeiros*).)  The Legislature also added a sunset provision to the statute in 1990, which it extended in 2007.  (*Medeiros*, at p. 1153.)  The amended sunset provision stated "[i]t is the intent of the Legislature that the provisions of this section be reviewed within 10 years to consider the effects of inflation on the additional terms imposed.  For that reason

_____

[2]    For the sake of simplicity, we refer to this version of the statute as section 12022.6.

6

this section shall remain in effect only until January 1, 2018, and as of that date is repealed unless a later enacted statute, which is enacted before January 1, 2018, deletes or extends that date." (§ 12022.6, subd. (f).)

The Legislature did not enact a replacement statute before January 1, 2018. As a result, section 12022.6 was repealed on January 1, 2018, one day before the People filed the information against Triggs.

b.      *Analysis*

Under the *Estrada* rule, there is a presumption the Legislature intends a statutory amendment that reduces criminal punishment to apply retroactively to any case in which the judgment is not yet final on the date the amendment takes effect. (*In re Estrada* (1965) 63 Cal.2d 740, 744.) However, in the case of *In re Pedro T.* (1994) 8 Cal.4th 1041 (*Pedro T.*), the Supreme Court held there is no such presumption when a statute is repealed under a sunset clause.

*Pedro T.* involved an amendment that increased the maximum punishment for vehicle theft. (*Pedro T., supra*, 8 Cal.4th at p. 1043.) The amended statute included a sunset provision stating the enhanced penalties would be effective for three years unless the Legislature directed otherwise, which it did not do. (*Ibid*.) The minor committed a vehicle theft while the enhanced penalties were in effect, but his case was not final when the lesser penalties were restored. (*Id*. at pp. 1043–1044.)

The Supreme Court held the *Estrada* rule did not apply and the minor should be sentenced using the enhanced penalties in effect when he committed the crime. (*Pedro T., supra*, 8 Cal.4th at p. 1043.) The court reasoned that the Legislature's intent was paramount, and "in temporarily increasing the

7

penalties for vehicle-taking, the Legislature determined the public safety required a three-year test of stricter punishments. . . . Far from determining that a lesser punishment for vehicle theft would serve the public interest, the Legislature expressly declared that *increased* penalties were necessary. *Estrada* is not implicated on these facts." (*Id*. at p. 1046.)

The high court further explained that "the very nature of a sunset clause, as an experiment in enhanced penalties, establishes—in the absence of evidence of a contrary legislative purpose—a legislative intent the enhanced punishment apply to offenses committed throughout its effective period." (*Pedro T., supra*, 8 Cal.4th at p. 1049.) Moreover, "a rule that retroactively lessened the sentence imposed on an offender pursuant to a sunset clause would provide a motive for delay and manipulation in criminal proceedings. When the Legislature signals, years in advance, its intention to reduce the punishment for an offense, defendant and counsel have a strong incentive to delay the finality of a judgment in the hope of eventually receiving the lessened, postsunset term." (*Id*. at pp. 1046–1047.)

Relying on *Pedro T.*, courts have held the repeal of section 12022.6 does not apply retroactively. (See *Medeiros, supra*, 46 Cal.App.5th at pp. 1154–1157; *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 337–338 (*Abrahamian*); see also *People v. Shiga* (2019) 34 Cal.App.5th 466, 471.) In *Abrahamian*, for example, the court upheld the imposition of a section 12022.6 enhancement on a defendant who was sentenced in March 2018 for crimes she committed several years earlier. (*Abrahamian*, at pp. 336–337.) The court explained that *Pedro T.* was "controlling authority" and the defendant "failed to show that, when the

8

sunset provision of section 12022.6 was enacted, the Legislature did not intend to apply the provision's enhanced punishment to offenses committed throughout its effective period." (*Abrahamian*, at p. 337.)

In *Medeiros*, the court concluded that "despite the lack of an express saving clause in section 12022.6, the text of the statute and its legislative history demonstrate with sufficient clarity that the Legislature intended its provisions to apply to defendants who committed their crimes before January 1, 2018." (*Medeiros, supra*, 46 Cal.App.5th at p. 1157.) The court noted "[t]he express language of the *sunset provision* itself states its purpose is to allow the Legislature to review the threshold amounts of the enhancement for inflation, not to allow the Legislature to consider whether the enhancements should continue to apply or whether the statute should be repealed. There is no indication that in passing the 2007 amendments the Legislature contemplated the statute might lapse, particularly in light of the consistent history of extensions of the sunset date. Thus, it is not 'an inevitable inference' here, as it was in *Estrada*, that the Legislature intended to impose a lesser punishment on defendants" who committed crimes while the statute was in effect. (*Id.* at p. 1154.)

We agree with the reasoning in *Medeiros* and *Abrahamian*, and similarly conclude the Legislature intended section 12022.6 to apply to all defendants who committed crimes before its repeal in 2018. Triggs, moreover, does not point to any statutory language or legislative history suggesting the Legislature intended to treat an implicit repeal of section 186.11, subdivision (a)(3) differently from a repeal of section 12022.6. Nor is there any apparent reason why it would want to do so. Accordingly,

even assuming section 186.11, subdivision (a)(3) was repealed on January 1, 2018, the trial court had the authority to impose the enhancement on Triggs, who committed her crimes between 2013 and 2015.

Triggs contends *Medeiros* and *Abrahamian* were wrongly decided because the courts failed to recognize the inclusion of the sunset provision in section 12022.6 reflected an intent to ameliorate punishment as time and inflation necessitated, rather than an experiment in enhanced punishment as in *Pedro T.* Triggs does not explain why this distinction is meaningful, nor is it self-evident. In both instances, the Legislature necessarily contemplated the possibility of reduced punishment in the future. The Supreme Court in *Pedro T.*, however, held that fact alone does not warrant an inference that the Legislature intended a repeal under a sunset provision to operate retroactively. (*Pedro T., supra*, 8 Cal.4th at pp. 1046–1047.) Moreover, as the court explained in *Medeiros*, "the fact that the 2007 amendment in this case was not a temporary experiment but a continuation of a long-standing policy of imposing harsher penalties for excessive taking reflects even stronger legislative intent that the enhancements apply throughout the effective period of the law. There is no hint in the legislative history that the Legislature in 2007 thought 'imposition of a lesser punishment' by *eliminating* the enhancements in 2018 might sufficiently serve the public interest." (*Medeiros, supra*, 46 Cal.App.5th at p. 1156.)

Triggs also seems to suggest the *Medeiros* and *Abrahamian* courts improperly focused on the Legislature's intent when it enacted section 12022.6's sunset provision, rather than its intent when it allowed the statute to lapse in 2018. According to Triggs, the Legislature's decision not to enact a replacement statute

10

reflects a determination that the enhancements were no longer necessary. Therefore, she argues, we must presume it intended the repeal to benefit all defendants whose cases were not yet final as of January 1, 2018.

The minor in *Pedro T.* made a similar argument, insisting the Legislature's decision not to extend the enhanced penalties in that case showed it believed they were unnecessary to the goal of deterrence. In rejecting this argument, the Supreme Court explained "[i]t is axiomatic that in assessing the import of a statute, we must concern ourselves with the Legislature's purpose at the time of the enactment. . . . [T]o seek a hypothetical legislative intent at some time after enactment of the statute would seem necessarily to disregard the probable legislative intent at the time of the enactment. We are directed to no authority sanctioning such an approach." (*Pedro T., supra*, 8 Cal.4th at pp. 1047–1048.) The same is true here.

Triggs's reliance on *Nasalga, supra*, 12 Cal.4th 784, is misplaced for similar reasons. In that case, the defendant stole $124,000, and the trial court imposed a two-year enhancement under a former version of section 12022.6. While the defendant's case was pending, the Legislature amended section 12022.6 to increase the threshold for the two-year enhancement from $100,000 to $150,000. (*Nasalga*, at pp. 788–789.) The Supreme Court determined the "inferred legislative intent in raising the amount necessary for a two-year enhancement . . . is an intent to *mitigate* punishment for offenders, such as defendant, to reflect the dollar's decline in value." (*Id*. at p. 795.) Accordingly, it held the defendant was entitled to the benefit of the lesser punishment under the *Estrada* rule. (*Nasalga*, at pp. 795, 797–798.)

11

*Nasalga* is of no help to Triggs, as that case involved an ameliorative amendment to section 12022.6, rather than its repeal under the sunset provision.  The focus in *Nasalga*, therefore, was on the Legislature's intent in enacting the amendment, whereas here, it is on the Legislature's intent when it enacted the sunset provision.  (*Nasalga, supra*, 12 Cal.4th at p. 795; *Pedro T., supra*, 8 Cal.4th at p. 1048.)  As discussed above, the statutory text and legislative history of the sunset provision show the Legislature did not intend a repeal to operate retroactively.

Triggs alternatively argues section 186.11 is unconstitutionally vague because it references a now-repealed statute.  As a result, she argues, a defendant would not reasonably know with clarity what, if any, penalty would apply to a cumulative theft between $100,000 and $500,000.  (See *In re Newbern* (1960) 53 Cal.2d 786, 792 ["The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law."].)  Relatedly, she argues the repeal of section 12022.6 created an ambiguity in section 186.11, which requires the statute be interpreted in her favor.  (See *People v. Soria* (2010) 48 Cal.4th 58, 65 ["ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation"].)

We need not consider these arguments because section 12022.6 was still in effect when Triggs committed her offenses.  Triggs, therefore, could easily discern the possible punishment for her crimes.  For the same reason, there was no ambiguity that would require an interpretation in her favor.

## 2. *The trial court erroneously believed it lacked authority to strike the section 186.11 enhancement*

Triggs contends the trial court erroneously believed it lacked authority to strike the section 186.11 enhancement. The Attorney General concedes the error, but argues it was harmless.

Under section 1385, a trial court has discretion to dismiss or strike a sentencing enhancement allegation, or alternatively, strike the additional punishment for the enhancement. (*People v. Fuentes* (2016) 1 Cal.5th 218, 224–225.) "The judicial authority to dismiss a criminal action or allegation in furtherance of justice is statutory and may be withdrawn by the Legislature. [Citation.] A court may exercise such authority unless, in a given context, the Legislature has clearly evidenced a contrary intent. [Citations.] Courts will not interpret another statute as eliminating the power to dismiss under section 1385 unless there is clear legislative direction to that effect. [Citation.]" (*People v. Chavez* (2016) 5 Cal.App.5th 110, 117.)

At sentencing, the trial court noted several times that it did not have the authority to strike the section 186.11 enhancement. Although not entirely clear, it appears the court believed it was required to impose the enhancement under section 1170.

Section 1170, subdivision (h)(3) mandates certain defendants serve their sentences in prison, rather than county jail. This includes defendants with a prior or current conviction for a serious or violent felony, defendants required to register as sex offenders, and defendants subject to a section 186.11 enhancement. (§ 1170, subd. (h)(3).) Section 1170, subdivision (f) states that "for purposes of [subdivision (h)(3)], any allegation that a defendant is eligible for state prison due to a prior or current conviction, sentence enhancement, or because the

13

defendant is required to register as a sex offender shall not be subject to dismissal pursuant to Section 1385."

To the extent the court believed these provisions precluded it from striking the enhancement, it was mistaken. Section 1170, subdivision (f) specifies that its prohibition is "for purposes of [section 1170, subdivision (h)(3)]" and applies only to an "allegation that a defendant is eligible for state prison due to a . . . sentence enhancement . . . ." (§ 1170, subd. (f).) It does not expressly prohibit the court from striking the enhancement allegation or punishment for the enhancement for other purposes, such as determining the defendant's term of imprisonment. If it did, trial courts would lack the authority to strike or dismiss allegations that a defendant suffered a prior serious or violent felony within the meaning of the Three Strikes law, authority the Supreme Court has repeatedly affirmed. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504; *People v. Vargas* (2014) 59 Cal.4th 635, 645.) Had the Legislature intended this result, we suspect it would have said so more clearly and directly.

Generally, " 'when the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' [Citation.] But if ' "the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act

14

and is not required." ' [Citation.]" (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.)

The Attorney General argues remand is not necessary because the trial court emphasized numerous aggravating circumstances, which shows it would not have struck the enhancement had it recognized its authority to do so. The court, however, also found several mitigating circumstances, and it declined to impose the greatest possible sentence. Moreover, unlike other cases in which courts have found remand was unnecessary, the trial court here did not explicitly state that it would decline to strike the enhancement if it had authority to do so. (See, e.g., *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896.) On this record, it is not sufficiently clear how the trial court would have acted had it recognized its authority under section 1385. (See *People v. Johnson* (2019) 32 Cal.App.5th 26, 69 [remanding so the trial court could consider whether to strike a firearm enhancement, even though the court made statements showing it was not sympathetic to the defendants].)

The Attorney General alternatively argues remand is not necessary because it would have been an abuse of discretion to strike the enhancement. (See *People v. DeGuzman* (1996) 49 Cal.App.4th 1049, 1055 ["Whether the trial court believed it had discretion to strike the alleged prior felony convictions or not, appellant has suffered no prejudice since it would have been a manifest abuse of that discretion to exercise it on this record."].)

When deciding whether to exercise its authority under section 1385, a trial court must consider any mitigating and aggravating circumstances, as well as the general objectives of sentencing as set forth in the California Rules of Court. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117.) The court

15

"must consider both ' "the constitutional rights of the defendant, and the interests of society represented by the People." ' [Citation.] Section 1385 allows courts to ensure 'that persons are sentenced based on the particular facts of the offense and all the circumstances. It enables the punishment to fit the crime as well as the perpetrator.' [Citation.] Where a court chooses to dismiss or strike under section 1385, 'the reason for dismissal must be "that which would motivate a reasonable judge." ' [Citation.]" (*People v. Shaw* (2020) 56 Cal.App.5th 582, 587.)

The Attorney General insists there were no facts that would motivate a reasonable judge to strike the section 186.11 enhancement in this case. Not so. As noted above, the trial court found circumstances in mitigation, including Triggs's early acceptance of responsibility and her prior satisfactory performance on probation. The record also shows Triggs made some restitution to the victim, and her cousin suggested her conduct was the result of past trauma and mental illness, which are also potential circumstances in mitigation. (Cal. Rules of Court, rule 4.423(b)(2), (5).)

On this record, and out of an abundance of caution, the proper disposition is to remand the case so the trial court may exercise its discretion in the first instance. We express no opinion on how the court should exercise that discretion.

3. ***The trial court erroneously believed it lacked authority to grant probation***

Triggs argues the trial court erroneously believed it lacked authority to grant probation. The Attorney General again concedes the error, but argues remand is not necessary because the error was harmless.

16

At sentencing, the court stated Triggs was "absolutely not eligible for probation" in light of her admission of the section 186.11 allegation. The court apparently relied on section 1170, subdivision (h)(3), which states that where a defendant "is convicted of a crime and as part of the sentence an enhancement pursuant to Section 186.11 is imposed, an executed sentence for a felony punishable pursuant to this subdivision shall be served in the state prison."

Section 1170, subdivision (h)(3) mandates the defendant serve her sentence in prison only if the court executes the sentence. It does not preclude the court from suspending execution of the sentence and placing the defendant on probation. This is confirmed by section 1170, subdivision (h)(4), which states "[n]othing in this subdivision shall be construed to prevent other dispositions authorized by law, including . . . an order granting probation pursuant to Section 1203.1."

The trial court's mistaken belief that it lacked authority to grant probation constitutes an abuse of discretion. (*People v. Orabuena* (2004) 116 Cal.App.4th 84, 99.) We need not decide whether the error was harmless since we are already remanding the case for resentencing. On remand, the court may exercise its discretion in the first instance.

**4.**     *Triggs has not shown the trial court erroneously believed it was required to impose the restitution fine*

Triggs contends the trial court erred at sentencing when it remarked that it "must" impose a restitution fine under section 1202.4, subdivision (b). Triggs insists this was error because section 1202.4 states the court must impose the fine "unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (§ 1202.4,

17

subd. (b).)  She also points out that under *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1171–1172, a court must stay the execution of a restitution fine until and unless the People demonstrate the defendant has the ability to pay it.

We agree with the Attorney General that the court's statements do not show it failed to recognize its discretion. Triggs does not point to anything in the record showing compelling and extraordinary reasons not to impose the fine; nor did she raise the *Dueñas* issue below.  The court's brief remark that it "must" impose the fine, therefore, was fully consistent with the record before it.  In any event, the court will have an opportunity to reconsider these issues on remand when it resentences Triggs.[3]

---

[3]     In a footnote, the Attorney General contends the trial court erroneously failed to impose a mandatory fine under section 186.11, subdivision (c), and failed to consider imposing a fine under section 1202.5.  The trial court should consider these issues on remand.

## DISPOSITION

We vacate Joyce Triggs's sentence and remand the case for resentencing consistent with this opinion.  We affirm the judgment in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.